TATE, Justice
(dissenting).
It has been called to our attention by defendant police juror (and not denied by plaintiffs-appellants) that the 21 photostats of checks not introduced into evidence, were inadvertently included in. the bundle of photostats of checks properly introduced into evidence. These are the transactions denoted in the majority opinion as “photostatic copies.” In my opinion these .were improperly included in the record, as they were not before the District Court, nor is there one line of testimony concerning them. The defendant never had an opportunity to explain or testify concerning them.
The “public contract fraud” act is directed against any public official securing the “expenditure of public funds” to himself or any partnership in which he has an interest'. If the transactions above are omitted from our consideration, it will be seen that there is absolutely none after March 31st (or April 31st), 1952, to the "Fornea Brothers”, the only firm whatsoever of all the payees in which defendant had any interest according to any testimony whatsoever. (For instance, the “Fornea Lumber Company” as shown by the testimony and the billheads is a partnership composed at various times of T. P. Fornea, J. E. Fornea and W. W. Fornea.) There is not one line of testimony to contradict his sworn testimony, and that of his brother and alleged partner, W. W. Fornea, that he had divested himself of all interest in said firm after the first quarter of 1952.
The fact that A. L. Fornea endorsed and cashed the' checks of the other Fornea enterprises owned by his brothers is certainly suspicious, and justifiably might lead to the belief, if supported by any evidence to this effect, that defendant disguised the expenditure of public funds to himself by having the payees denoted as his brothers’ firm.' But not only is this inference unsupported by the testimony before us, but contradicted by the sworn testimony of defendant and his brothers, believed by the jury. .
Thus in effect we are finding the District Court’s judgment manifestly erroneous,because we doubt the credibility of defendant’s witnesses and find that his mere endorsement of the checks and cashing same (explained both by him and the State’s witnesses as occasioned by the nine brothers? interchangeably doing one another’s banking business at the Bank which was five miles away from their own community)' by this very fact constitutes a violation of the public contract act, despite uncontradicted sworn testimony that these acts did not constitute the “expenditure” of funds to defendant. But determination of credibility is a function of the trier of fact, not of. the appellate court. We have permitted presumptions or inferences created in our own minds (which, after all, are not evidence) to outweigh sworn testimony found credible by the District Court and jury.
Furthermore, although in view of the foregoing this observation is not necessary, out of the ten “Fornea Brothers” transactions properly in the record, only one (June 10th, 1953, in amount of $315.76) was made from the Fifth Ward account, defendant being a juror from the Fifth Ward. The majority opinion found that when ,a police jury operates on the “ward system”, a police juror ipso facto secures the “expenditure” of public funds to himself when purchasing for his ward from a firm in which he owns an interest; since under the “ward system”, he directs and must approve expenditures in his ward. Thus he can no longer hide behind the fiction that it was a public body, not himself, who made the purchase.' But the correlative of this doctrine is that'the police juror does not (in the absence of any special showing) exert influence to secure expenditures of public funds for purchases made for the account of other wards, since under the “ward system” it is the other ward’s police juror who secures the expenditure. It may be added that the public contract act does not prohibit purchases by the police jury from firms in which its members own an interest, but merely the use of the police juror’s influence to secure this purchase; for it is quite obvious that in many instances it may be most efficient and economical to *481 purchase from such a firm, such as whére it runs the only gravel pit in the vicinity, .etc.
For the above-reasons, I respectfully'disagree with the majority’s conclusion that no rehearing should be granted.